## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

MERCK SHARP & DOHME LLC AND
MERCK & CO., INC.,

        Plaintiffs,

        v.

CENTRAL RX 1 INC.,

        Defendant.

Case No. _____

**COMPLAINT**

      Plaintiffs Merck Sharp & Dohme LLC and Merck & Co., Inc., (collectively, *"Plaintiff"*

or *"Merck"*) file this complaint against Central Rx 1 Inc. (*"Defendant"*) for trademark

counterfeiting, trademark infringement, unfair competition and false designation of origin, and

unfair and deceptive business practices, and seeks injunctive, monetary, and other relief.

Plaintiff alleges as follows on actual knowledge with respect to itself and its own acts and on

information and belief as to all other matters.

### <u>INTRODUCTION</u>

      1.     Merck is a premier research-intensive biopharmaceutical company with a 130-

year history of delivering innovative health solutions.

      2.     Through scientific innovation, Merck helps address the global diabetes epidemic.

Over the years, Merck has created and maintains a broad diabetes portfolio.

      3.     Merck's leading diabetes drug product is identified under the mark Januvia® and

is offered in tablet form and incorporates the active ingredient sitagliptin.

4.      The U.S. Food & Drug Administration ("*FDA*") first approved the Januvia®
medicine in 2006 as a DPP-4 inhibitor for the treatment of Type 2 diabetes mellitus as an adjunct
to diet and exercise.

5.      Merck is the only company authorized to identify its FDA-approved sitagliptin
medicines using the federally-registered Januvia® and Merck® marks.

6.      The proliferation of counterfeit medicines, often facilitated through illicit online
pharmacies, is a troubling phenomenon.  Counterfeit trafficking of Merck's prescription-only
medicines poses significant risk to patient health and safety, infringes Merck's valuable
trademark rights, and jeopardizes Merck's reputation and the goodwill associated with its
branded medicines.

7.      Merck employs significant resources and tools to investigate and combat
counterfeiters and reduce the spread of defective pharmaceutical goods online via e-commerce
platforms and brick-and-mortar establishments.

8.      Following a months-long investigation, Merck determined that Defendant peddled
counterfeit Januvia® tablets—and likely other Merck medicines—to pharmacies and healthcare
professionals using a third-party online peer-to-peer marketplace.

9.      Merck brings this action pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*,
and related state laws to put an end to Defendant's counterfeiting and infringement of Plaintiff's
rights in its federally-registered Januvia® and Merck® marks, unfair competition, and deceptive
business trade practices.

## **PARTIES**

10.     Plaintiff Merck Sharp & Dohme LLC is a New Jersey limited liability company
with its principal place of business in Rahway, New Jersey.

11.    Plaintiff Merck & Co., Inc. is a New Jersey corporation with its principal place of business in Rahway, New Jersey.

12.    Defendant is a New York corporation with a business address at 69-09 Central Ave, Glendale, New York 11385, in this District.

## JURISDICTION AND VENUE

13.    The Court has subject matter jurisdiction over the Lanham Act causes of action pleaded herein pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

14.    The Court has supplemental jurisdiction over the state causes of action pleaded herein pursuant to 28 U.S.C. § 1338 and 28 U.S.C. § 1367(a).

15.    Defendant is subject to personal jurisdiction in this District because it is a New York corporation with a business address in this District at 69-09 Central Avenue, Glendale, New York 11385.

16.    Defendant is further subject to personal jurisdiction in this District because Defendant has committed the acts complained of herein in this District and has done business in this District.  Specifically, on information and belief, Defendant has marketed, offered for sale, sold, shipped, and distributed its counterfeit and infringing products from this District.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant has operated and conducted business in this District.

## MERCK'S JANUVIA® MEDICINE AND MARKS

18.    Sitagliptin is the active ingredient of the Januvia® medicine.

19.    Sitagliptin is a member of a class of medicines called DPP-4 inhibitors (dipeptidyl peptidase-4 inhibitors).  DPP-4 inhibitors enhance the body's own ability to lower blood sugar levels by increasing the levels of the body's own active incretins, glucagon-like peptide-1 (GLP-1) and glucose-dependent insulinotropic polypeptide (GIP).

20.     Sitagliptin helps to improve the levels of insulin when a patient's blood sugar level is high and also helps to decrease the amount of sugar made by the body.

21.     The Januvia® medicine is indicated as an adjunct to diet and exercise to improve glycemic control in adults with Type 2 diabetes mellitus.

22.     Through its long and successful history, the Januvia® medicine has developed into one of Merck's flagship offerings.

23.     Over the last few years alone, medical professionals have written millions of Januvia® prescriptions for patients across the country, and in the over 127 countries worldwide where the Januvia® medicine is available.

24.     Merck has invested, and continues to invest, extensive resources to promote awareness of the Januvia® medicine among patients and healthcare professionals to help address the diabetes public health challenge.

25.     Merck uses its federally-registered Januvia® and Merck® marks to identify and promote its FDA-approved Januvia® medicine.

26.     Merck first adopted and used its Januvia® word mark at least as early as October 2006 and has used it continuously since that time.

27.     The Januvia® word mark is inherently distinctive.

28.     Merck owns the following U.S. trademark registration for the Januvia® word mark.  A true and correct copy of the registration certificate is included in **Exhibit A**.

| Mark | Reg. No. | App. Date<br>Reg. Date | Goods & Services |
|---|---|---|---|
| JANUVIA | 3,261,637 | April 7, 2005<br>July 10, 2007 | (Class 5) Pharmaceutical preparations for the treatment of diabetes |

29.     Merck's rights to its registered Januvia® word mark are incontestable.

30.    The Merck® marks include the Merck® word mark and the Merck® logo mark:


.

31.    Merck first adopted and used its Merck® word mark at least as early as February 1887 and has used it continuously since that time.

32.    The Merck® word mark is inherently distinctive.

33.    Merck first adopted and used its Merck® logo mark at least as early as December 1992 and has used it continuously since that time.

34.    The Merck® logo mark is inherently distinctive.

35.    Merck owns the following U.S. trademark registrations for the Merck® marks. True and correct copies of the registration certificates are included in **Exhibit B**.

| Mark | Reg. No. | App. Date Reg. Date | Goods & Services |
|---|---|---|---|
| MERCK | 2,169,031 | November 26, 1996 June 30, 1998 | (Class 5) Full line of pharmaceuticals |
|  | 1,973,165 | January 27, 1992 May 7, 1996 | (Class 5) Full line of pharmaceuticals for human and veterinary use |

36.    Merck's rights to its registered Merck® marks are incontestable.

37.    Merck has promoted, advertised, and marketed the Januvia® medicine using the Januvia® mark and the Merck® marks since at least as early as October 2006.

38.    Merck's promotion, advertising, and marketing has spanned different channels, directed to physicians, other health care professionals, and patients, including on the websites januvia.com and merck.com.

39.     As a result of its long and extensive use of the Januvia® mark and of the Merck® marks, Merck owns valuable common law rights in and to the Januvia® mark and the Merck® marks, in addition to its registered trademark rights.

40.     The Januvia® mark and the Merck® marks are exclusively associated with Merck, serve to identify genuine Merck medicines, and are valuable assets of Merck.

## DEFENDANT'S UNLAWFUL ACTIVITIES

41.     Unfortunately, given the massive scope of the diabetes public health challenge in the United States,[1] unscrupulous persons and entities prey on those suffering from diabetes by purveying bogus products.[2]  This activity is particularly pernicious given the safe and effective treatments available to help manage the serious disease of diabetes.[3]

42.     Defendant has marketed and has offered for sale, sold, and shipped in interstate commerce putative drug products that bear counterfeits and infringements of the Januvia® mark and of the Merck® marks (the *"Infringing Products"*).

43.     Over the course of 2024, Defendant posted at least 19 listings on the MatchRX online prescription drug marketplace ("*MatchRX marketplace*")[4], offering to sell putative bottles of the Januvia® medicine.

44.     Many or all of the listed bottles were sold.

---

[1] The FDA estimates that at least 30 million people in the United States are living with diabetes and about 1 in 4 people living with diabetes don't know they have it.  *See Diabetes*, FDA (May 8, 2024), https://www.fda.gov/consumers/health-education-resources/diabetes.
[2] *Beware of Illegally Marketed Diabetes Treatments, Fraudulent Pharmacies*, FDA (Dec. 18, 2023), https://www.fda.gov/consumers/consumer-updates/beware-illegally-marketed-diabetes-treatments-fraudulent-pharmacies.
[3] The FDA has issued warning letters to business entities purveying products for diabetes in violation of federal law. *See Beware of Illegally Marketed Diabetes Treatments, Fraudulent Pharmacies*, FDA (Dec, 18, 2023), https://www.fda.gov/consumers/consumer-updates/beware-illegally-marketed-diabetes-treatments-fraudulent-pharmacies ("In September 2021, the FDA and the Federal Trade Commission issued warning letters to 10 companies for illegally selling dietary supplements claiming to cure, treat, mitigate, or prevent diabetes.").
[4] *MatchRX*, https://www.matchrx.com/ (last visited Sept. 26, 2025) (describing itself as "the largest Pharmacy-to-Pharmacy (P2P) marketplace . . . allowing pharmacies to buy and sell overstock directly with each other").

45.    Defendant posted one such MatchRX listing on October 15, 2024. The listing offered to sell up to nine 90-count bottles of putative 100mg Januvia® tablets at a price of $1,564.29 per bottle.

46.    Two pharmacies, one in Kentucky and the other in West Virginia, placed orders for the nine listed bottles.

47.    The pharmacy in Kentucky placed an order for seven of the bottles in October 2024.

48.    On receiving the shipment, the Kentucky pharmacy had concerns about the authenticity of the shipment and, based on input from MatchRX, quarantined the shipment as containing potential counterfeit product.

49.    In or around December 2024, the Kentucky pharmacy contacted Merck about the suspected counterfeit product.

50.    In or around January 2025, Merck arranged for its in-house forensic services laboratory to obtain custody of the suspected counterfeit bottles from the Kentucky pharmacy and conduct a forensic evaluation.

51.    In or around February 2025, the forensic services laboratory confirmed that the bottles were counterfeit.

52.    The pharmacy in West Virginia placed an order for two of the bottles in October 2024.

53.    On receiving the shipment, the West Virginia pharmacy suspected that the products were counterfeit and quarantined the shipment.

54.    In April 2025, the West Virginia pharmacy informed Merck of the suspected counterfeits.

55. In or around May 2025, Merck arranged for its forensic services laboratory to obtain custody of the suspected counterfeit bottles from the West Virginia pharmacy and conduct a forensic evaluation.

56. In or around May 2025, the forensic services laboratory confirmed that the bottles were counterfeit.

57. At first glance, the packaging of the counterfeits appears nearly identical to that of authentic Januvia® medicine, because it bears exact duplicates of the Januvia® mark and the Merck® marks, among other imitations.

| Authentic | Counterfeit |
|:---:|:---:|
|  |  |
|  |  |

58.    However, closer inspection reveals several mistakes in the counterfeit versions confirming their inauthenticity.

59.    For example, whereas authentic versions of the Januvia® medicine identify the correct manufacturer, Merck Sharp & Dohme LLC, the counterfeit versions erroneously identify the manufacturer as "Merck Sharp & Dohme Corp."  The images below include red boxes for clarity.

| Authentic | Counterfeit |
|---|---|
|  | |

60.    As also reflected in the images above, whereas authentic versions of the Januvia® medicine identify the correct physical address for the pharmaceutical manufacturer, Northumberland, UK NE23 3JU, the counterfeit versions erroneously identify the address as "Northuberland, UK Ne23 3JU" in altered font size.

61.    Furthermore, all nine counterfeit bottles bear identical serial numbers—a clear indication of forgery, as authentic bottles each bear a unique serial number.[5]

62.    The counterfeit bottles bear additional defects in their labeling and construction.

63.    These gross inaccuracies and other fake imitations are conspicuous and such acts were done willfully and with knowledge that the products were counterfeit and that such acts constituted infringement of Merck's rights.

---

[5] See 15 U.S.C. §§ 360ee(14), (20).

64.     Indeed, Defendant attempted to evade detection of its willful counterfeiting by submitting falsified invoices concerning the origin of its counterfeit products to MatchRX.

65.     These intentional acts by Defendant were made in furtherance of its deceptive scheme to traffic in counterfeit medicines.

66.     With evidence of Defendant's counterfeiting in hand, Merck, in April 2025, contacted the MatchRX marketplace to request information regarding these and any other potential sales of counterfeit Januvia® or other Merck medicines by Defendant on the MatchRX platform.

67.     In October 2025, Merck attempted to contact Defendant to demand that it cease its counterfeiting.  Merck sent letters to two publicly available business addresses for Defendant, including Defendant's registered business address, and sent emails to two publicly available business emails for Defendant.  Defendant did not respond to any of Merck's communications.

68.     After conducting its investigation and taking short-term steps to address Defendant's unlawful conduct, Merck now brings this lawsuit for permanent relief.

69.     Defendant has sold clear counterfeits and infringements of the Januvia® and Merck® marks.

70.     Defendant's marketing, offering for sale, sale, shipment, and distribution of the Infringing Products constitute illegal uses in commerce of the Januvia® and Merck® marks in connection with the marketing, offering for sale, sale, shipment, or distribution of the Infringing Products.

71.     On information and belief, Defendant continues, or intends to continue, to market, offer for sale, sell, ship, and distribute Infringing Products in interstate commerce.

72.    Defendant's use of the Januvia® and Merck® marks is without the permission, consent, or authorization of Plaintiff.  Defendant has no right to use and, on information and belief, knew that it has no right to use, the Januvia® and Merck® marks in connection with the Infringing Products.

73.    Defendant's use of the Januvia® and Merck® marks have led to, and will continue to lead to, confusion in the marketplace regarding the origin, identity, source, and authenticity of the Infringing Products.

74.    Defendant's marketing, offering for sale, sale, shipment and distribution of counterfeit prescription products bearing spurious versions of Merck's Januvia® and Merck® marks raises significant risks to patient health and safety, infringes Merck's valuable trademark rights, and jeopardizes Merck's reputation and the goodwill associated with its Januvia® and Merck® brands.

75.    Defendant's actions erode, and will continue to erode, consumer confidence in the safety and efficacy of Merck's medicines.

76.    As a result of Defendant's actions, Merck is losing profits from lost sales of its genuine Januvia® medicines and suffering a loss of the goodwill built up in its Januvia® and Merck® marks.

77.    As a result of Defendant's actions, Defendant has unjustly enriched itself through sales it would not have otherwise made.

78.    If Defendant is allowed to continue its unlawful activity, Merck will continue to suffer such loss of goodwill and brand recognition built over many years.

79.    On information and belief, Defendant has knowingly and willfully engaged in its unlawful activities in direct violation of Merck's rights.

80.     On information and belief, Defendant acted at a minimum with reckless disregard for or was willfully blind to its infringement of Merck's trademarks.

81.     For these reasons, this conduct qualifies as an exceptional case under 15 U.S.C. § 1117(a).

82.     Merck has suffered irreparable injury as a direct and proximate result of Defendant's wrongful marketing, offering for sale, sale, shipment, and distribution of the Infringing Products.

83.     Merck has no adequate remedy at law.

84.     On information and belief, Defendant's unlawful acts will persist without judicial intervention.

85.     On information and belief, unless enjoined by this Court, Defendant will continue to use the Januvia® and Merck® marks as associated with its Infringing Products, all in violation of Plaintiff's rights.

86.     Defendant should be enjoined from further violating Plaintiff's well-established rights in and to the Januvia® and Merck® marks.

## FIRST CAUSE OF ACTION

### Trademark Counterfeiting
### 15 U.S.C. § 1114

87.     Plaintiff realleges and incorporates each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

88.     The Januvia®, Merck®, and Merck® logo marks are each inherently distinctive, strong, valid, and protectable trademarks.

89.     Plaintiff's rights in each mark have become incontestable.

90.    Accordingly, Plaintiff's federal registration for each of the Januvia®, Merck®, and Merck® logo marks constitutes conclusive evidence of (i) the validity of the mark, (ii) Plaintiff's registration and ownership of the mark, and (iii) Plaintiff's exclusive right to use the mark in commerce on or in connection with the goods identified in the registration.

91.    Defendant's use of the Januvia®, Merck®, and Merck® logo marks to market, offer for sale, sell, distribute, and ship goods bearing counterfeits was, and is, without the consent of Plaintiff.

92.    Defendant's unauthorized use of reproductions, copies, colorable imitations, and spurious designations that are identical to, confusingly similar to, and substantially indistinguishable from Plaintiff's federally-registered Januvia®, Merck®, and Merck® logo marks in connection with the marketing, offering for sale, sale, distribution and shipment of Infringing Products has caused, and is likely to continue to cause, confusion, mistake, and deception, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

93.    Defendant has intentionally used these counterfeits or spurious designations that are identical with, or substantially indistinguishable from, the Januvia®, Merck® and Merck® logo marks, knowing they are counterfeit, in connection with the marketing, offering for sale, sale, distribution, and shipment of Infringing Products.

94.    Defendant has acted willfully and deliberately and with full knowledge of Plaintiff's rights in the Januvia®, Merck®, and Merck® logo marks.

95.    Defendant's intentional use of the counterfeit marks was done with knowledge that the counterfeit marks would cause confusion, mistake, and deception, and as such, Defendant's acts constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

96. Defendant at a minimum acted with reckless disregard that its acts of using the Januvia®, Merck®, and Merck® logo marks to market, offer for sale, sell, distribute, and ship goods bearing counterfeits represented infringement.

97. Defendant has unfairly profited from its trademark counterfeiting.

98. By reason of Defendant's acts of trademark counterfeiting, Plaintiff has suffered, and, if not enjoined, will continue to suffer, damage to the goodwill associated with its Januvia®, Merck®, and Merck® logo marks.

99. Defendant's acts of trademark counterfeiting have irreparably harmed, and, if not enjoined, will continue to irreparably harm, Plaintiff, its Januvia®, Merck®, and Merck® logo marks, and the valuable goodwill associated with those marks.

100. Defendant's acts of trademark counterfeiting have irreparably harmed, and if not enjoined, will continue to irreparably harm, the interests of the public in being free from confusion, mistake, and deception.

101. By reason of Defendant's acts, Plaintiff's remedies at law are not adequate to compensate for the injuries inflicted by Defendant, entitling Plaintiff to injunctive relief pursuant to 15 U.S.C. § 1116.

102. By reason of Defendant's intentional use of counterfeit marks and willful counterfeiting, Plaintiff is entitled to an award of three times Plaintiff's damages and Defendant's profits, under 15 U.S.C. § 1117(b).

103. By reason of Defendant's intentional use of counterfeit marks and willful counterfeiting, Plaintiff is entitled to an award of statutory damages under 15 U.S.C. § 1117(c).

104. This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### Trademark Infringement
### 15 U.S.C. § 1114

105.    Plaintiff realleges and incorporates each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

106.    By virtue of Plaintiff's prior use and registration, Plaintiff has priority over Defendant with respect to the use of the Januvia® mark for pharmaceutical preparations for the treatment of diabetes and with respect to the use of the Merck® and Merck® logo marks in connection with a full line of pharmaceuticals and a full line of pharmaceuticals for human and veterinary use, respectively.

107.    As a result of Plaintiff's extensive marketing under the federally-registered Januvia®, Merck®, and Merck® logo marks and the nationwide sales of life-saving medicine identified therewith, the Januvia®, Merck®, and Merck® logo marks have become well-known to the public as marks associated with Plaintiff, such that any pharmaceutical product and packaging bearing such trademarks are immediately associated by purchaser and the public as being a product of Plaintiff.

108.    Defendant has used reproductions, copies, colorable imitations, and spurious designations that are identical to, confusingly similar to, and substantially indistinguishable from Plaintiff's federally-registered Januvia®, Merck®, and Merck® logo marks in commerce in connection with Defendant's marketing, offering for sale, sale, distribution, and shipment of its Infringing Products.

109.    Defendant's acts of using the Januvia®, Merck®, and Merck® logo marks to market offer for sale, sell, distribute, and ship goods bearing counterfeits is done with full

knowledge of Plaintiff's prior rights in the Januvia®, Merck®, and Merck® logo marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

110.    Defendant's use of the Januvia®, Merck®, and Merck® logo marks to market, offer for sale, sell, distribute, and ship goods bearing counterfeits was, and is, intentional.

111.    Defendant has unfairly profited from its trademark infringement.

112.    By reason of Defendant's acts of trademark infringement, Plaintiff has suffered, and, if not enjoined, will continue to suffer, damage to the goodwill associated with its Januvia®, Merck®, and Merck® logo marks.

113.    Defendant's acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

114.    Defendant's acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm, the interests of the prescription-medicine consuming public in being free from confusion, mistake, and deception.

115.    Defendant's acts of trademark infringement have irreparably harmed, and, if not enjoined, will continue to irreparably harm, Plaintiff, its Januvia®, Merck®, and Merck® logo marks, and the valuable goodwill associated with the Januvia®, Merck®, and Merck® logo marks.

116.    By reason of Defendant's acts, Plaintiff's remedies at law are not adequate to compensate for the injuries inflicted by Defendant, entitling Plaintiff to injunctive relief pursuant to 15 U.S.C. § 1116.

117.    By reason of Defendant's willful acts of trademark infringement, Plaintiff is entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

118.     This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION

**Unfair Competition and False Designation of Origin**
**15 U.S.C. § 1125(a)**

119.     Plaintiff realleges and incorporates each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

120.     Defendant uses the Januvia®, Merck®, and Merck® logo marks in commerce in connection with Defendant's Infringing Products.

121.     Defendant uses the Januvia®, Merck®, and Merck® logo marks in commerce in a manner that is likely to cause confusion, or to cause mistake, or to deceive the relevant public into believing that Defendant's Infringing Products are from, authorized by, sponsored by, approved by, or otherwise affiliated with Plaintiff.

122.     The above-described acts of Defendant constitute infringement of the Januvia®, Merck®, and Merck® logo marks, and use of false designations of origin, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), entitling Plaintiff to relief.

123.     Defendant has unfairly profited from the actions alleged.

124.     By reason of the above-described acts of Defendant, Plaintiff has suffered, and, if not enjoined, will continue to suffer, damage to the goodwill associated with the Januvia®, Merck®, and Merck® logo marks.

125.     The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interests of the prescription-medicine consuming public in being free from confusion, mistake, and deception.

126.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff, the Januvia®, Merck®, and Merck® logo marks, and the valuable goodwill associated with those marks.

127.    By reason of Defendant's acts, Plaintiff's remedies at law are not adequate to compensate for the injuries inflicted by Defendant, entitling Plaintiff to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

128.    Because the above-described acts of Defendant are willful, Plaintiff is entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

129.    This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

### Unfair and Deceptive Business Practices
### N.Y. Gen. Bus. L. § 349

130.    Plaintiff realleges and incorporates each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

131.    The above-described acts of Defendant constitute unfair methods of competition, and unconscionable, deceptive, or unfair acts or practices in violation of the laws of the State of New York.

132.    The wrongful conduct of Defendant, including but not limited to the marketing, offering for sale, sale, shipment, and distribution of Infringing Product, are deceptive trade practices under New York General Business Law § 349.

133.    This wrongful conduct was consumer-oriented within the meaning of Section 349 given the intent of Defendant to distribute Infringing Products into the marketplace and therefore harm the general consuming public.

134.    The above-described acts have significant ramifications for the public at large, especially if occurring on a wider scale, given the massive scope of the diabetes public health challenge in the United States and the significant risk to patient health and safety from Defendant's actions.  Diabetes is a serious disease affecting millions of Americans and purveyors of bogus products marketed for this illness attempt to capitalize on those suffering.  The above-described acts are particularly pernicious given the safe and effective treatments available to help manage the serious disease of diabetes.

135.    Defendant's unfair and deceptive business practices negatively impact the local drug supply and overall pharmaceutical market in New York by interfering with the processes engaged in by healthcare practitioners and related parties to secure safe and legitimate medicines for patients and by inhibiting patient care.

136.    Because of this unfair and deceptive conduct, Plaintiff has been and will continue to be damaged both monetarily and in innumerable ways non-remediable through monetary judgment.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1.      That the Court enter a judgment against Defendant that Defendant has:

      a.      Infringed the rights of Plaintiff in its federally-registered Januvia®, Merck®, and Merck® logo marks and engaged in counterfeiting, in violation of 15 U.S.C. § 1114(1);

      b.      Infringed the rights of Plaintiff in its federally-registered Januvia®, Merck®, and Merck® logo marks and engaged in unfair competition, in violation of 15 U.S.C. § 1125(a);

      c.      Engaged in unfair and deceptive business practices in violation of the laws of the State of New York.

2.      That the Court declare that each of the above acts was willful.

3.      That the Court preliminarily and permanently enjoin and restrain Defendant and its agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

      d.      using the Januvia®, Merck®, and Merck® logo marks, including (i) use in any manner likely to cause confusion or mistake, to deceive, or otherwise infringe Plaintiff's rights in those marks, or (ii) use in connection with the marketing, offering for sale, shipping, or distributing any Infringing Products;

      e.      counterfeiting or infringing the Januvia®, Merck®, and Merck® logo marks by marketing, offering for sale, shipping, or distributing any products bearing any simulation, reproduction, counterfeit, or copy of the Januvia®, Merck®, and Merck® logo marks;

f.    using any reproduction, counterfeit, or copy of the Januvia®, Merck®, and Merck® logo marks in connection with the marketing, offering for sale, sale, shipment, distribution, or other production of any unauthorized products related to or tending to relate Plaintiff's prescription-only Januvia® medicine;

g.    using any trademark, service mark, trade name, business name, trade dress, logo, business symbol, or any term as part of any domain name or social media identifier that contains in whole or in part, or that is identical to, or confusingly similar to, the Januvia®, Merck®, or Merck® logo marks;

h.    making any statement or representation whatsoever, or using any false designation of origin, or performing any act, which can or is likely to lead the prescription-taking public to believe that any products distributed, sold or offered for sale, or rented by Defendant is associated or connected with Plaintiff; and

i.    engaging in unfair and deceptive business practices with respect to Merck's Januvia® medicine.

4.    That Defendant be required to deliver to Plaintiff for destruction all unauthorized materials bearing any of the Januvia®, Merck®, or Merck® logo marks in association with the Infringing Products pursuant to 15 U.S.C. § 1118.

5.    That Defendant be required to compensate Plaintiff damages for all of Defendant's profits derived from their unlawful conduct and Plaintiff's lost profits from sales of genuine prescription-only medicines due to Defendant's infringement, counterfeiting, false designation of origin, unfair competition trebled to the full extent provided under Sections 35(a)

and 35(b) of the Lanham Act, 15 U.S.C. § 1117(a)-(b), or alternatively, statutory damages in the amount of up to $2,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act.

6.      That Plaintiff be awarded its actual damages and attorneys' fees pursuant to N.Y. Gen. Bus. L. § 349.

7.      That the Court award Plaintiff pre-judgment and post-judgment interest on all damages.

8.      That the Court award Plaintiff its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

9.      That the Court award Plaintiff the costs of suit incurred herein.

10.     That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders or execution of any Order entered in this action, for the modification of any such Order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

11.     That the Court award such other or further relief as the Court may deem just and proper.


October 22, 2025                    Respectfully submitted,

                                    COVINGTON & BURLING LLP

                                    /s/ Sara J. Dennis
                                    Sara J. Dennis
                                    30 Hudson Yards
                                    New York, New York 10001
                                    Telephone:  212-841-1000
                                    sdennis@cov.com

Robert N. Hunziker (*pro hac vice forthcoming*)
Françoise N. Djoukeng (*pro hac vice forthcoming*)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone:  202-662-6000
rhunizker@cov.com
fdjoukeng@cov.com

*Attorneys for Plaintiffs Merck Sharp*
*& Dohme LLC and Merck & Co., Inc.*